***********
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Berger and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Berger, with minor modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. All stipulations contained in the Pre-Trial Agreement are received into evidence.
2. The parties are subject to the Workers' Compensation Act and are properly before the Industrial Commission regarding this matter.
3. At all relevant times hereto, an employee-employer relationship existed between plaintiff and Drexel Heritage Furnishings.
4. Drexel Heritage was insured with the Phoenix Insurance Company.
5. Plaintiff's average weekly wage has been determined to be $383.20 yielding a compensation rate of $255.48.
 ADDITIONAL EXHIBITS
1. Interrogatory responses were marked as defendant's exhibit 1 and received into evidence.
2. A first aid responder log was marked as defendant's exhibit 2 and received into evidence.
3. An incident report was marked as defendant's exhibit 3 and received into evidence.
4. An attendance log was marked as defendant's exhibit 4 and received into evidence.
 ***********
Based upon all of the competent evidence of record and reasonable inferences therefrom, the Full Commission makes the following additional:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 41 years old and had an eleventh grade education. Plaintiff had been employed by Drexel as a planer operator.
2. Prior to February 12, 2000, plaintiff had a history of severe back problems. In 1997, plaintiff underwent an L5-S 1 anterior spinal fusion with BAK cages surgically implanted.
3. On November 2, 1999, plaintiff was performing his regular job duties operating a planer when he slipped on some pipe next to the planer. Plaintiff's right leg went sideways and his right knee buckled. Plaintiff experienced pain in his knee, leg, hip and groin immediately following this incident.
4. The set of circumstances whereby plaintiff injured his right knee while he slipped on some pipe on November 2, 1999 constitutes an interruption of the plaintiff's regular work routine and the introduction of an unlooked for and untoward event which was not expected or designed by the plaintiff.
5. On February 12, 2000, plaintiff was performing his regular job duties operating a planer when it began to malfunction. Plaintiff walked quickly to the machine in order to cut it off when he "stubbed" and twisted his leg causing his knee to move inward.
6. The set of circumstances whereby plaintiff injured his right knee while he responded to a malfunctioning machine on February 12, 2000 constitutes an interruption of the plaintiff's regular work routine and the introduction of an unlooked for and untoward event which was not expected or designed by the plaintiff.
7. As a result of the November 2, 1999 and February 12, 2000 work related incidents involving the twisting of plaintiff's right knee, plaintiff sustained a medial meniscus tear in his right knee.
8. As a result of the November 2, 1999 and February 12, 2000 work related incidents involving the twisting of plaintiff's right knee, plaintiff was unable to earn any wages on March 8, 9, and 10, 2000.
9. As a result of the November 2, 1999 and February 12, 2000 work related incidents involving the twisting of plaintiff's right knee, plaintiff underwent arthroscopic surgery on March 29, 2000. This surgery was reasonably necessary to lessen plaintiff's disability, effect a cure and/or reduce the pain in plaintiff's right knee.
10. As a result of the March 29, 2000 arthroscopic surgery, plaintiff was unable to earn any wages from March 29, 2000 to April 17, 2000. Plaintiff did not receive any temporary total disability compensation for any of the days he was out of work during this time period because Ms. Leighton, the Human Resources Representative for Drexel, was under the mistaken belief that plaintiff was not eligible for benefits until he was out of work for a total of 21 days.
11. On or about April 17, 2000, plaintiff returned to work for Drexel performing light duty work as a guard in the guardhouse. Drexel only offered this job to the plaintiff for the time period that it would take the plaintiff to heal and be able to return to his planer operator position. This job was offered as rehabilitative employment, however, the Full Commission takes judicial notice that no order was entered into by the Industrial Commission requiring the plaintiff to perform this light duty job.
12. On or about May 12, 2000, plaintiff gave up his light duty job with Drexel because he was told by Elizabeth Leighton that he could draw unemployment benefits while healing from his injury. He elected to draw unemployment benefits and permit an older worker who otherwise would have been subject to a general layoff to work in his place.
13. Initially, plaintiff received unemployment benefits, but the Employment Security Commission terminated benefits when it determined that plaintiff was unable to look for work because of his right knee injury.
14. The Full Commission does not credit testimony that sometime between March 29, 2000 and October 31, 2000, plaintiff was using a crutch at home because of his right knee injury when he struck his foot with his crutch and fell. Consequently, the Full Commission finds that plaintiff's lumbar strain conservatively treated by Dr. David and Dr. Rudins did not result from such an event and was not related to his prior injuries and was not compensable.
15. As of October 31, 2000, plaintiff had reached maximum medical improvement with regard to the right knee injury surgically treated by Dr. Jansen.
16. As a result of the November 2, 1999 and February 12, 2000 work related incidents involving the twisting of plaintiff's right knee, plaintiff sustained a three percent permanent partial disability to his right leg.
17. There is insufficient evidence of record to support a finding that plaintiff was permanently and totally disabled following October 31, 2000 as a result of the permanent injury he sustained to his right knee. As of October 31, 2000, plaintiff was able to return to full duty work without restrictions. No evidence was presented that plaintiff conducted a reasonable, but unsuccessful job search following October 31, 2000.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. On November 2, 1999, plaintiff sustained an injury by accident arising out of and in the course of his employment with Drexel whereby he sustained a right knee injury in the work assigned. N.C. Gen. Stat. § 97-2(6).
2. On February 12, 2000, plaintiff sustained an injury by accident arising out of and in the course of his employment with Drexel whereby he sustained a right knee injury in the work assigned. N.C. Gen. Stat. § 97-2(6).
3. At the time that plaintiff agreed to be laid off, he was performing a light duty job for Drexel. Plaintiff was under no order pursuant to N.C. Gen. Stat. § 97-25 to engage in rehabilitative employment. Plaintiff was induced to give up his employment relationship with Drexel because Drexel by and through one of its agents led the plaintiff to believe that he would be able to receive unemployment benefits. Plaintiff is entitled to receive temporary total disability compensation for the time period March 8, 9, and 10, 2000, March 29, 2000 to April 17, 2000 and May 12, 2000 to October 31, 2000 at a compensation rate of $255.48 per week. N.C. Gen. Stat. § 97-29.
4. Plaintiff is entitled to receive permanent partial disability compensation for the permanent injury to his right knee for six weeks at a compensation rate of $255.48 pr week. N.C. Gen. Stat. § 97-31.
5. Plaintiff is entitled to have the defendant provide all medical treatment arising from his injuries of November 2, 1999, and February 12, 2000 to the extent it tended to effect a cure, give relief or lessen plaintiff's disability. N.C. Gen. Stat. § 97-25.
6. Defendants are entitled to a credit for unemployment benefits paid to plaintiff during periods when he was entitled to workers' compensation benefits. N.C. Gen. Stat. § 97-42.1.
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendants shall pay temporary total disability compensation in the amount of $255.48 per week directly to the plaintiff for the time periods March 8, 9, and 10, 2000, March 29, 2000 to April 17, 2000 and May 12, 2000 to October 31, 2000. This amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
2. Defendants shall pay permanent partial disability compensation in the amount of $255.48 per week for six weeks for the permanent partial disability to the plaintiff's right knee. This amount has accrued and shall be paid in a lump sum subject to the attorney's fee approved below.
3. A reasonable attorney fee of twenty-five percent of the compensation due plaintiff under paragraphs 1 and 2 of this AWARD is approved for plaintiff's counsel and shall be paid as follows: Defendants shall deduct twenty-five percent of the lump sum due plaintiff under paragraph 1 and 2 of this AWARD and shall pay it directly to plaintiff's counsel.
4. Defendants shall pay expert witness fees in the amounts of $325.00 to Dr. Jansen, $325.00 to Dr. David, and $325.00 to Dr. Maxwell.
5. Defendants shall pay all medical expenses incurred or to be incurred for the treatment of plaintiff's meniscus tear in his right knee.
6. Defendants shall pay the costs.
This 16th day of August 2002.
 S/__________ THOMAS BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/____________ BUCK LATTIMORE CHAIRMAN